# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

DENNIS J. SCHULLER,

    Plaintiff,

vs.

GREAT-WEST LIFE & ANNUITY
INSURANCE COMPANY,

    Defendant.

No. C-04-62-LRR

**ORDER**

## TABLE OF CONTENTS

*I. INTRODUCTION AND PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . *1*

*II. ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

    *A. Legal Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

    *B. Local Rules* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*

    *C. Affidavit of Schuller* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*

    *D. Affidavit of Becky M. Schuller* . . . . . . . . . . . . . . . . . . . . . . . . . *7*

    *E. Affidavit of Dr. Gene Cretsinger* . . . . . . . . . . . . . . . . . . . . . . . *10*

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *16*

## *I. INTRODUCTION AND PROCEDURAL BACKGROUND*

The matters before the court are Defendant Great-West Life & Annuity Insurance Company's ("Great-West") Objection to and Motion to Strike Portions of the Affidavits of Plaintiff and Becky Schuller (docket no. 29) [hereinafter "Motion to Strike Schuller"] and Great-West's Objection to and Motion to Strike the Affidavit of Gene Cretsinger (docket no. 30) [hereinafter "Motion to Strike Cretsinger"), both filed on July 11, 2005. Plaintiff Dennis J. Schuller ("Schuller") filed a one-page Resistance on July 25, 2005 (docket no.

34), and Great-West filed Replies to Schuller's Resistance on August 1, 2005 (docket nos. 36 and 37). The court held a telephonic hearing on the motions on September 15, 2005, and both parties were represented by counsel. The court finds the issues fully submitted and ready for decision.

Great-West objects to three affidavits supplied by Schuller in support of his resistance to Great-West's motion for summary judgment. Great-West objects to the affidavit of Dennis J. Schuller (docket no. 24) based on alleged violations of Federal Rule of Civil Procedure 56(e). Great-West alleges that numerous paragraphs in the affidavit contain inadmissible hearsay evidence, that the statements are not based on Schuller's personal knowledge and that Schuller is not competent to testify to many of the statements in the affidavit. Further, Great-West objects on essentially identical grounds to most paragraphs in the affidavit of Becky M. Schuller (docket no. 24). Finally, Great-West objects to the affidavit of Dr. Gene Cretsinger (docket no. 24). Great-West argues Schuller failed to comply with discovery rules regarding expert witnesses, in violation of Federal Rules of Civil Procedure 26 and 37(c)(1), Local Rule 26.1(b), and Federal Rule of Evidence 702. In addition, Great-West argues Dr. Cretsinger's affidavit is full of hearsay and conclusory allegations, rather than facts.

Schuller responds to each of Great-West's allegations in summary fashion. With regard to Schuller's affidavit and the affidavit of Becky M. Schuller, he concludes that the statements are admissible and that they are competent to testify to them. In response to Great-West's Motion to Strike Cretsinger, Schuller states: "Dr. Gene Cretsinger was disclosed as an expert witness in Plaintiff's Rule 26(a) Disclosures." He provides no further argument and cites no legal authority.

In its Reply regarding the affidavits of Schuller and Becky M. Schuller, Great-West argues Schuller failed to identify how individual statements in the affidavits are admissible, failed to cite any authority (including exceptions to the hearsay rule) and failed to show how

the affiants are competent to testify to the matters therein. In its Reply regarding the affidavit of Dr. Cretsinger, Great-West argues, again, that Schuller failed to provide a written expert report from Dr. Cretsinger and otherwise failed to comport with the requirements of Federal Rule of Civil Procedure 26(a)(2). Great-West argues that even if Dr. Cretsinger's June 10, 2005 affidavit is accepted as the Rule 26 affidavit, it is untimely and shows that Dr. Cretsinger is not an appropriate expert under the Federal Rules of Evidence.

## *II. ANALYSIS*

### *A. Legal Standards*

Federal Rule of Civil Procedure 56(e) provides that affidavits in support of or in opposition to summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); *see McSpadden v. Mullins*, 456 F.2d 428, 430 (8th Cir. 1972) (noting the same). "Where an affidavit does not meet this standard, it is subject to a motion to strike." *McSpadden*, 456 F.2d at 430; *see also Williams v. Thomson Corp.*, 383 F.3d 789, 791 (8th Cir. 2004) (affirming district court's decision to strike an affidavit where it was filed late and because the "affidavit merely repeated the allegations contained in [the] complaint"); *Bradley v. Work*, 154 F.3d 704, 707 (8th Cir. 1998) ("The motions to strike various pieces of evidence offered by the plaintiffs in opposition to or support of the motions for summary judgment are well-taken and to the extent that the proffered evidentiary materials contain inadmissible hearsay, lay opinions, speculations, or conclusions, they are stricken."). Moreover, "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R.

3

Evid. 801(c). Hearsay is inadmissible unless the hearsay falls into an exception. *See* Fed. R. Evid. 802 and 803.

### *B. Local Rules*

Schuller's Resistance does not comply with the Local Rules. The party resisting a motion must file a brief containing a statement of the grounds for resisting the motion and citations to the authorities upon which the resisting party relies. *See* LR 7.1(e). Although Schuller includes a very short statement of the grounds for resisting Great-West's Motion to Strike Schuller and Motion to Strike Cretsinger, he cites no authority. Consequently, Schuller's one-page Resistance does not comply with Local Rule 7.1(e). Given Schuller's blatant disregard for the Local Rules, the court deems it appropriate to strike Schuller's Resistance. *See* LR 1.1(f). However, rather than grant as unresisted Great-West's motions, the court turns to consider the merits of the instant motions.

### *C. Affidavit of Schuller*

Great-West argues that certain paragraphs of Schuller's affidavit should be stricken from the record. Great-West claims the following paragraphs should be stricken because they contain inadmissible hearsay: paragraphs 13, 14, 20, 21, 23, 24, and 27 to 34. Additionally, Great-West seeks to strike the following paragraphs because Schuller is not competent to testify to the matters asserted therein: paragraphs 20, 21, 23, 25, and 27 to 34. Schuller merely argues that such paragraphs contain "items which would be admissible in evidence and Plaintiff would be competent to testify to them."

**Paragraph 13.** Great-West alleges that paragraph 13 of Schuller's affidavit should be stricken, however, most of that paragraph consists of quotations taken from his letters to Great-West dated August 13, 2001, and September 13, 2001. The court assumes Great-West does not object to the admission of these letters, as it has submitted them in support of its motion for summary judgment. (*See* docket no. 13, at Appendix, at pp. 104 and 108). The court therefore strikes the sections of paragraph 13 that quote the two letters,

4

and it will rely upon the actual letters in determining the summary judgment motion. To the extent the remaining paragraph contains legal conclusions rather than admissible facts, the court will not rely on the conclusions. The court preserves only the following statements from paragraph 13: "After speaking with Ms. Miller, I seriously questioned her accuracy of the terms of my policy. I located all of my insurance material."

**Paragraph 14.** This paragraph details the October 8, 2001 telephone conversation between Schuller and Great-West representative Martha Miller. Schuller recently requested the record be left open in order to submit an audio recording of this conversation (docket no. 35). The court granted the motion and ordered Schuller to submit the audiotape to the court (docket no. 39). Therefore, because the court finds most of the statements in paragraph 14 of Schuller's affidavit contain hearsay and conclusions, and because the audiotape is the best evidence of the conversation paragraph 14 purports to summarize, paragraph 14 is hereby stricken, with limited exceptions. The court preserves only the following statements from paragraph 14:

> After several weeks with no reply I grew increasingly worried. By 8/10/01 I could wait no longer so I called Ms. Miller, this was our second telephone conversation. . . . I really needed the [benefit] money. . . . I was upset by this conversation. All that I could do was hope that something would change.

**Paragraphs 20, 21, and 23.** These paragraphs contain summaries of statements in the documents Schuller submitted in support of his resistance to the summary judgment motion. The statements in these paragraphs contain bias, speculation, inadmissible hearsay, and conjecture; they do not comport with Federal Rule of Civil Procedure 56(e). Accordingly, paragraphs 20, 21, and 23 are stricken from Schuller's affidavit. As previously explained, the court will instead rely on the actual reports, letters and audiotape of the October 8, 2001 conversation.

5

**Paragraph 24.**   Pursuant to the Federal Rules of Evidence, Schuller may not testify to his wife's state of mind.  Therefore, the court strikes the last two sentences of paragraph 24.

**Paragraph 25.**   The court strikes the seventh sentence of this paragraph ("Stress and pressure can cause anyone to behave abnormally.") because Schuller is not competent to make such a statement.

**Paragraph 27.**   The court strikes the third sentence of this paragraph ("When we got home Becky said I needed to calm down.") as inadmissible hearsay.  The court finds that although statements like, "I screamed for Becky to call 911," are hearsay, they could fall under the excited utterance exception of Federal Rule of Evidence 803(2) if the proper foundation were laid.  Moreover, because the described events happened to Schuller, he is competent to testify to them and he has personal knowledge.  Therefore, the remaining sentences in paragraph 27 will be considered by the court.

**Paragraph 28.**   Schuller is not competent to testify about the medical tests that were conducted on him or the doctors' prognosis.  He is certainly not competent to testify about the doctors' state of mind or what they "believed."  Additionally, the paragraph is filled with conclusory statements and inadmissible hearsay.  The court will rely on the medical report from St. Luke's Hospital Trauma Center (docket no. 24, at Appendix, at p. 17) to assess Schuller's health on February 21, 2003, and what, if any, impact the events of that day have on the pending summary judgment motion.  The court preserves only the following statements from this paragraph:  "When the ambulance arrived the first thing asked was if I had been under a lot of stress.  When the ambulance got to the hospital emergency room Dr. Craig Hovda, the ER doctor also asked if I'd been under a lot of stress."

**Paragraph 29.**   The second subparagraph of paragraph 29 of Schuller's affidavit is stricken by the court.  It contains conclusions, which are prohibited by the rules.

**Paragraphs 30, 31, and 32.** Schuller is not competent to assess the cause of his "stroke" or to testify, among other things, about the state of mind of specific Great-West employees. Conclusory statements like "[Great-West] intentionally caused me to agonize" and "[Great-West] resorted to bullying tactics" cannot be considered by the court in determining the outcome of the summary judgment motion. Schuller's statements are also speculative. Pursuant to Federal Rule of Civil Procedure 56(e), paragraphs 30, 31, and 32 are stricken by the court.

**Paragraph 33.** The majority of this paragraph is merely testimony regarding when Schuller received certain insurance documents. The court will strike and disregard the final sentences, which read: "If they believe that I'm under this policy then why didn't they make it available to me until 6/3/05. I should be covered under the 1992 policy through age seventy." These are arguments and conclusions, not facts.

**Paragraph 34.** Schuller does not have personal knowledge to testify about the mailings received by "all other ADA insureds." Therefore, the first sentence of this paragraph is stricken. The second sentence of paragraph 34 contains nothing but speculation, therefore, it is also stricken. The following sentences will be considered by the court: "I was working at the fulltime practice of dentistry in 2000. I didn't have any negative symptoms for the first five months after returning to work." The remainder of the first subparagraph is stricken because Schuller is not competent to testify to the matters therein, and it contains conclusions and speculation. The second and third subparagraphs of paragraph 34 are also stricken, because they contain inadmissible hearsay, conclusions, argument and speculation.

### D. *Affidavit of Becky M. Schuller*

Next, Great-West argues Becky M. Schuller's affidavit is similarly inadmissible and inadequate. Great-West claims the following paragraphs should be stricken because they contain inadmissible hearsay evidence and are not based on personal knowledge: 3, 4, 6 to

7

11, 13, and 15.  Great-West seeks to strike the following paragraphs because Becky M. Schuller is not competent to testify to the matters asserted therein: 3, 4, 7 to 11, and 14 to 16.  Schuller retorts that the information contained in the foregoing paragraphs "would be admissible in evidence . . . [and] are matters that Becky M. Schuller would be competent to testify to."  He provides no further analysis, explanation, or citations to authority.

**Paragraphs 3 and 4.**  The entirety of these paragraphs are stricken by the court, because they contain nothing but inadmissible hearsay.

**Paragraph 6.**  The only statement that is not inadmissible hearsay evidence in this paragraph is that "Denny got off the phone and he was very upset."  The remainder of the paragraph is stricken.

**Paragraph 7.**  The only statement that is not inadmissible hearsay in this paragraph is the third sentence:  "I haven't ever seen Denny madder than he got from that telephone call."  The remainder of the paragraph is stricken in its entirety.

**Paragraph 8.**  The rules of evidence prohibit Becky M. Schuller from testifying about Schuller's state of mind.  This paragraph contains hearsay, speculation and conclusions.  The court only preserves the following sentences from paragraph 8:

> We waited to see if Denny's next benefit check would come and it didn't.  Finally we decided that the best thing to do would be just to write to Martha's supervisor and mention that the check didn't come and see if she would do something about it.  We just waited and hoped for the best.  The check did come a month later.

The court strikes the remainder of paragraph 8.

**Paragraph 9.**  The court will rely on the actual correspondence submitted by the parties to determine what information was contained in certain letters.  Therefore, the second sentence of paragraph 9 is stricken.  Becky M. Schuller may not testify regarding Schuller's state of mind, therefore, the third sentence is stricken.  The fourth and sixth sentences of the paragraph contain conclusions, speculations and inadmissible hearsay.

8

Therefore, they are also stricken and the only sentences remaining are the following: "Denny wrote some more letters over the next few months. Finally we just waited for word of the appeal."

**Paragraph 10.** Only the first and last sentences of this paragraph ("At the end of 2002 we still hadn't gotten an answer. . . . [Schuller] started practicing on his dental models.") are admissible. The remainder of the paragraph is stricken because it contains inadmissible hearsay and speculation.

**Paragraph 11.** The only admissible sentence in this paragraph is the second sentence ("Then on Friday night 2/7/03 [Schuller] was practicing his dental procedures, when he came into the living room holding his hand, in a lot of pain."). The remainder of the paragraph is stricken due to inadmissible hearsay, competency and speculation.

**Paragraph 13.** The last sentence of this paragraph is stricken as inadmissible hearsay.

**Paragraph 14.** Becky M. Schuller is not competent to diagnose Schuller's condition as a "stroke" and this paragraph contains inadmissible hearsay. The court hereby strikes the first, part of the second, and fifth sentences of this paragraph. The remainder of the paragraph reads: "A few minutes later, [Schuller] was rolling around on the floor, beet red, in tremendous agony. I called 911. By the time he took the aspirin the left side of his face was sagging down and he couldn't standup."

**Paragraph 15.** The last four sentences of this paragraph are stricken, due to a lack of competency and personal knowledge, and because the statements are conclusory.

**Paragraph 16.** Most of the statements in this paragraph are inadmissible conclusions and speculations. It also contains inadmissible hearsay. The second, third, fourth, and part of the fifth sentence are stricken. Only the following sentences and phrases remain: "The next day, Saturday 2/22/03 I went to the mail box and there was Denny's twenty fifth

benefit check. Denny then wrote to Great West to see for sure if the payments would keep coming. Denny was finally back to himself again."

### *E. Affidavit of Dr. Gene Cretsinger*

Great-West objects to the affidavit of Dr. Gene Cretsinger, a chiropractor, for two reasons. First, Great-West argues Schuller failed to provide Dr. Cretsinger's written expert report, in violation of the Federal Rules of Civil Procedure, the Local Rules, the Federal Rules of Evidence, and the court's Scheduling Order and Discovery Plan (docket no. 4). Second, Great-West argues Dr. Cretsinger's affidavit is full of hearsay and conclusory allegations, rather than facts. Schuller summarily responds that "Dr. Gene Cretsinger was disclosed as an expert witness in Plaintiff's Rule 26(a) Disclosures." Great-West challenges that statement and argues that although Dr. Cretsinger was disclosed in Schuller's initial disclosures, Schuller failed to comply with the requirements of Federal Rule of Civil Procedure 26(a)(2), which mandates the disclosure of an expert report, among other things.

The affidavit of an expert may be stricken for the failure to disclose the expert pursuant to Federal Rule of Civil Procedure 26(a)(2). Federal Rule of Civil Procedure 37(c)(1) enforces Rule 26(a) by providing that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). Rule 37(c)(1) is generally invoked to preclude expert testimony at trial, however, it can also be applied to strike affidavits in summary judgment proceedings. *See Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1007-09 (8th Cir. 1998) (granting defendant's motion for summary judgment and affirming the district court's exclusion of plaintiff's expert's opinion because the disclosure was untimely and the untimeliness prejudiced defendant). Federal Rule of Civil Procedure 16 "gives the district court the authority to set management deadlines and to impose

sanctions for their violation." *Trost*, 162 F.3d at 1008 (citing Rule 16). Therefore, "[t]he rules thus permit a court to exclude untimely evidence unless the failure to disclose was either harmless or substantially justified." *Id.*

The affidavit of an "expert" may also be stricken if the individual does not meet the standards of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See Ruffin v. Shaw Indus., Inc.*, 149 F.3d 294, 296 (4th Cir. 1998) (granting motion to strike affidavit of a doctor because she did not qualify as an expert under Federal Rule of Evidence 702, nor did she satisfy the standards set forth in *Daubert*). Rule 702 requires the following: "(1) the evidence must be based on scientific, technical or other specialized knowledge that is useful to the finder of fact in deciding the ultimate issue of fact; (2) the witness must have sufficient expertise to assist the trier of fact; and (3) the evidence must be reliable or trustworthy." *Kudabeck v. Kroger Co.*, 338 F.3d 856, 859 (8th Cir. 2003). The Eighth Circuit Court of Appeals has summarized the requirements of *Daubert*:

> In *Daubert* the Supreme Court discussed the district court's gatekeeper role in screening expert testimony for reliability and relevance. *See* 509 U.S. at 589, 113 S. Ct. 2786. Some of the factors it identified for evaluation of proffered testimony were whether the theory or technique is subject to testing, whether it has been tested, whether it has been subjected to peer review and publication, whether there is a high known or potential rate of error associated with it, and whether it is generally accepted within the relevant community. *Id.* at 593-94, 113 S. Ct. 2786. This evidentiary inquiry is meant to be flexible and fact specific, and a court should use, adapt, or reject *Daubert* factors as the particular case demands. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141-42, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). There is no single requirement for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant.

*Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2005).

If an affidavit contains only factual material and lay opinion, rather than purported expert opinions, qualification as an expert is not required. *See Rice v. Kempker*, 374 F.3d 675, 681 (8th Cir. 2004) (affirming denial of motion to strike affidavits based on a failure to identify affiants as experts pursuant to Rule 26(a)(2) where court determined "the affidavits contain factual material and merely lay opinion based on the defendants' personal knowledge gained from their work in the Department of Corrections"); *see also Burlington N. R.R. Co. v. Nebraska*, 802 F.2d 994, 1004 (8th Cir. 1986) (explaining that "personal knowledge or perception acquired through review of records prepared in the ordinary course of business, or perceptions based on industry experience" provide foundation for lay testimony).

One of Great-West's claims regarding Dr. Cretsinger's affidavit is that Schuller failed to comply with Federal Rule of Civil Procedure 26(a)(2)(A) and (B) and Local Rule 26.1(b), which require the disclosure of a "written report" at the time an expert is disclosed. Although the court ordered Schuller to disclose this information by October 15, 2004, Great-West argues Schuller failed to make the required disclosures. Schuller has provided no resistance to these allegations, other than to state that Dr. Cretsinger was disclosed. Neither party provided the court evidence that Schuller has provided Great-West with Dr. Cretsinger's written report and, as such, the court must assume no written report exists. As such, the first evidence Great-West received of Dr. Cretsinger's opinion came to it when Dr. Cretsinger's affidavit was filed in support of Schuller's resistance to the summary judgment motion on June 27, 2005. There is no question that the evidence of Dr. Cretsinger's opinion was over eight months late, in violation of the rules and this court's order. *See Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. 1995) (explaining that a failure to disclose in a timely manner is equivalent to a failure to disclose).

The court may strike Dr. Cretsinger's affidavit for this failure to disclose a written expert report unless the failure was either harmless or substantially justified. Fed. R. Civ. P. 37(c)(1); *see Trost*, 162 F.3d at 1008. Schuller has presented no justification for this tardiness, let alone a substantial justification for it. It also cannot be said to be a harmless failure. Great-West premised its summary judgment motion at least partially on Schuller's failure to produce an expert opinion. The case is scheduled for trial on October 24, 2005. Therefore, Great-West is significantly prejudiced by the late production of Dr. Cretsinger's opinion because it was given less than four months, rather than the year contemplated by the Scheduling Order and Discovery Plan, to refute Dr. Cretsinger's testimony and opinions. Therefore, the court finds that Schuller's failure to disclose Dr. Cretsinger's written report was neither harmless nor substantially justified. Dr. Cretsinger's affidavit is stricken insofar as it contains expert opinions.

The inquiry does not end there, however. In this case, it appears that Schuller attempts to utilize Dr. Cretsinger as both an expert and a lay witness. Therefore, the court must preserve any portions of Dr. Cretsinger's affidavit which contain only factual material and lay opinions. *See Rice*, 374 F.3d at 681.

The court finds that although many of the statements in Dr. Cretsinger's affidavit purport to be expert opinion and must be stricken, some of the statements in the affidavit survive because they are only factual material and lay opinions. Dr. Cretsinger is neither a medical doctor nor an expert in psychology. Rather, he is a chiropractor licensed by the State of Iowa. He is not competent to testify regarding Schuller's psychological condition or emotional health. The court hereby strikes a majority of the statements in Dr. Cretsinger's affidavit due to inadmissible hearsay, lack of competency, lack of personal knowledge and speculation. In addition, the court strikes them because they contain numerous legal conclusions. The court will consider only the following portions of Dr. Cretsinger's affidavit:

I, W. Gene Cretsinger, being first duly sworn on oath, depose and state:

1. All facts set forth herein are based upon my personal knowledge.

2. I am a practicing chiropractor licensed by the state of Iowa. I have been in private practice in Cedar Rapids for the past 39 years. Dennis Schuller has been a patient of mine since May 4 of 1983.

3. From 8/6/01 thru 2/26/03 my records indicate that I had nineteen appointments with Dennis. I treated Dennis at each of these visits.

5. I did notice a dramatic increase in Dennis's anxiety level at the beginning of 2003. [H]e was extremely worried and nervous.

6. On 2/10/03 my records show that Dennis appeared for an unscheduled visit to my office in a great deal of pain and it was visually clear that his right wrist joint capsule had ruptured. There was a ping pong ball sized protrusion extruding from the dorsal aspect of his right wrist, it was inflamed and very painful.

8. Four days later, 2/14/03 Dennis again showed up without a scheduled appointment. I noted that his wrist and hand were very sore. I noted that the joint seems to pop at times and create more soreness in his wrist.

9. Once again four days later on 2/18/03 Dennis came in again. He was in no better shape than I had last seen him. I felt very sorry for this man.

10. I saw Dennis on a scheduled appointment at 2/26/03.

11. Enclosed is a copy of the ER report from St. Luke's Hospital. This document is part of my records.[1]

13. I would like to point out that I sent several correspondence concerning this patient to Great West. In particular on April 6, 2001, I sent Great West an overview of Dennis's debilitating hand condition since 1979. Also, on September 4, 2001, I wrote a letter explaining the nature and extent of Dennis's loss that began August 24, 1992. I completed forms that were supplied by Great West that answered their specific questions concerning the 2000 disability. I also wrote directly to Gina Goodreau on March 25, 2002 to clarify my opinion of the cause of Dennis's 2000 accidental injury.[2]

14. Since no additional information was requested or questions asked [by Great-West], it was assumed that they had what they needed.

(docket no. 24, at Appendix, at pp. 14-16).

---

[1] The court will rely on the medical report from St. Luke's Hospital Trauma Center (docket no. 24, at Appendix, at p. 17), rather than Dr. Cretsinger's summary of the report.

[2] The court will rely upon the actual documents submitted by the parties in determining the summary judgment motion. (*See* docket no. 13, at Appendix, at pp. 126, 129, and 130; and docket no. 24, at Appendix, at pp. 18, 19, 20, and 23).

### *III. CONCLUSION*

For the foregoing reasons, **IT IS THEREFORE ORDERED:**

(1) Defendant's Objection to and Motion to Strike Portions of the Affidavits of Plaintiff and Becky Schuller (docket no. 29) is hereby **GRANTED IN PART** and **DENIED IN PART**; and

(2) Defendant's Objection to and Motion to Strike the Affidavit of Gene Cretsinger (docket no. 30) is hereby **GRANTED IN PART** and **DENIED IN PART.**

**IT IS SO ORDERED.**

DATED this 15th day of September, 2005.

LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA